FILED

NOV 29 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

Jeffrey S. Gerardo #146508
Steven M. Dailey #163857
KUTAK ROCK LLP
Suite 1100
18201 Von Karman Avenue
Irvine, CA  92612-1077
Telephone:  (949) 417-0999
Facsimile:  (949) 417-5394

Attorneys for Defendant U.S. BANK NATIONAL
ASSOCIATION AS SUCCESSOR TRUSTEE TO
BANK OF AMERICA, NATIONAL
ASSOCIATION, SUCCESSOR BY MERGER TO
LA SALLE BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR MORGAN STANLEY
TRUST 2007-8XS

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>TA KIM TO,<br><br>              Debtor. | Case No.  8:10-bk-22705-TA<br>Adversary Case No.: 8:10-ap-01502-TA<br><br>Assigned to: Hon. Theodor C. Albert<br>Courtroom: 5B |
| TA KIM TO,<br><br>              Plaintiff,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR MORGAN STANLEY TRUST 2007-8XS; NDEx WEST, LLC; and all persons claiming by, through, or under such persons, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint averse to Plaintiff's title thereto; and DOES 1-100, inclusive,<br><br>              Defendants. | **REQUEST FOR JUDICIAL NOTICE**<br><br>[Federal Rule of Civil Procedure, Rule 12(b)(6)]<br><br>Filed and Served Concurrently with:<br><br>1. Motion To Dismiss<br>2. Motion To Strike<br><br>Date:     February 3, 2011<br>Time:     11:00 a.m.<br>Ctrm.:    5B |

1    Defendant, U.S. BANK NATIONAL ASSOCIATION AS SUCCESSOR

2    TRUSTEE    TO    BANK    OF    AMERICA,    NATIONAL    ASSOCIATION,

3    SUCCESSOR    BY    MERGER    TO    LA    SALLE    BANK    NATIONAL

4    ASSOCIATION AS TRUSTEE FOR MORGAN STANLEY TRUST 2007-8XS

5    hereby requests that the Court take judicial notice, pursuant to Federal Rules of

6    Evidence, Rule 201, of the following documents in connection with Defendant's

7    Motion to Dismiss and Motion to Strike

| Exhibit | Document |
|---|---|
| **"A"** | The Interspousal Transfer Grant Deed dated November 22, 2006 and recorded on December 6, 2006, in the Official Records of the Clerk-Recorder's Office, Orange County, Document Number 2006000815834. A true and correct copy is attached hereto as Exhibit **"A"**. |
| **"B"** | The Deed of Trust dated November 24, 2006 and recorded on December 6, 2006, in the Official Records of the Clerk-Recorder's Office, Orange County, Document Number 2006000815835. A true and correct copy is attached hereto as Exhibit **"B"**. |
| **"C"** | The Deed of Trust dated April 9, 2007 and recorded on April 24, 2007, in the Official Records of the Clerk-Recorder's Office, Orange County, Document Number 2007000262267. A true and correct copy is attached hereto as Exhibit **"C"**. |
| **"D"** | The Notice of Default dated April 2, 2009 and recorded April 6, 2009, in the Official Records of the Clerk-Recorder's Office, Orange County, Document Number 2009000162918. A true and correct copy is attached hereto as Exhibit **"D"**. |
| **"E"** | The Notice of Trustee's Sale dated July 22, 2009 and recorded July 24, 2009, in the Official Records of the Clerk-Recorder's Office, Orange County, Document Number 2009000397501. A true and |

1    correct copy is attached hereto as Exhibit "**E**".

2  "**F**"    The Trustee's Deed Upon Sale dated August 20, 2010 and recorded

3    on August 24, 2010, in the Official Records of the Clerk-Recorder's

4    Office, Orange County, Document Number 2010000409632. A true

5    and correct copy is attached hereto as Exhibit "**F**".

6

7    Dated:    November 29, 2010        KUTAK ROCK LLP

8

9                    By: _____

10                        Jeffrey S. Gerardo
                        Steven M. Dailey

11                        Attorneys for Defendant
                        U.S. BANK NATIONAL ASSOCIATION

12                        AS SUCCESSOR TRUSTEE TO BANK
                        OF AMERICA, NATIONAL

13                        ASSOCIATION, SUCCESSOR BY
                        MERGER TO LA SALLE BANK

14                        NATIONAL ASSOCIATION AS
                        TRUSTEE FOR MORGAN STANLEY
                        TRUST 2007-8XS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4834-1222-2984.1        - 3 -        REQUEST FOR JUDICIAL NOTICE

1    Defendant, U.S. BANK NATIONAL ASSOCIATION AS SUCCESSOR

2  TRUSTEE    TO    BANK    OF    AMERICA,    NATIONAL    ASSOCIATION,

3  SUCCESSOR    BY    MERGER    TO    LA    SALLE    BANK    NATIONAL

4  ASSOCIATION AS TRUSTEE FOR MORGAN STANLEY TRUST 2007-8XS

5  hereby requests that the Court take judicial notice, pursuant to Federal Rules of

6  Evidence, Rule 201, of the following documents in connection with Defendant's

7  Motion to Dismiss and Motion to Strike

8  **Exhibit**        **Document**

9  **"A"**         The Interspousal Transfer Grant Deed dated November 22, 2006 and

10         recorded on December 6, 2006, in the Official Records of the Clerk-

11         Recorder's    Office,    Orange    County,    Document    Number

12         2006000815834.   A true and correct copy is attached hereto as

13         Exhibit **"A"**.

14  **"B"**         The Deed of Trust dated November 24, 2006 and recorded on

15         December 6, 2006, in the Official Records of the Clerk-Recorder's

16         Office, Orange County, Document Number 2006000815835.  A true

17         and correct copy is attached hereto as Exhibit **"B"**.

18  **"C"**         The Deed of Trust dated April 9, 2007 and recorded on April 24,

19         2007, in the Official Records of the Clerk-Recorder's Office, Orange

20         County, Document Number 2007000262267.   A true and correct

21         copy is attached hereto as Exhibit **"C"**.

22  **"D"**         The Notice of Default dated April 2, 2009 and recorded April 6,

23         2009, in the Official Records of the Clerk-Recorder's Office, Orange

24         County, Document Number 2009000162918.   A true and correct

25         copy is attached hereto as Exhibit **"D"**.

26  **"E"**         The Notice of Trustee's Sale dated July 22, 2009 and recorded July

27         24, 2009, in the Official Records of the Clerk-Recorder's Office,

28         Orange County, Document Number 2009000397501.   A true and

KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4834-1222-2984.1                    - 2 -                    REQUEST FOR JUDICIAL NOTICE

1

correct copy is attached hereto as Exhibit "**E**".

2

**"F"**        The Trustee's Deed Upon Sale dated August 20, 2010 and recorded

3

on August 24, 2010, in the Official Records of the Clerk-Recorder's

4

Office, Orange County, Document Number 2010000409632.  A true

5

and correct copy is attached hereto as Exhibit "**F**".

6

7

Dated:    November 29, 2010            KUTAK ROCK LLP

8

9

By: /s/
Jeffrey S. Gerardo

10

Steven M. Dailey
Attorneys for Defendant

11

U.S. BANK NATIONAL ASSOCIATION
AS SUCCESSOR TRUSTEE TO BANK

12

OF AMERICA, NATIONAL
ASSOCIATION, SUCCESSOR BY

13

MERGER TO LA SALLE BANK
NATIONAL ASSOCIATION AS

14

TRUSTEE FOR MORGAN STANLEY
TRUST 2007-8XS

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit "A"

RECORDING REQUESTED BY
TICOR TITLE COMPANY
OF CALIFORNIA

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    **9.00**

**2006000815834 08:00am 12/06/06**

108 73 G02 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

**RECORDING REQUESTED BY:**
Lucky Team Escrow, Inc.

**AND WHEN RECORDED MAIL TO:**
**AND MAIL TAX STATEMENT TO:**
KIM TO TA
10231 KENMORE STREET
Anaheim, CA 92804

Order No.    125387-19
Escrow No. 06-3261-NT
Parcel No. 126-345-12

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## INTERSPOUSAL TRANSFER GRANT DEED
(Excluded from reappraisal under California Constitution Act 13 A 1.et seq.

DOCUMENTARY TRANSFER TAX **$ NONE**

This is an Interspousal Transfer and not a change in ownership under §63 of the Revenue and Taxation code and Grantor(s) has(have) checked the applicable exclusion from reappraisal:

_____ From Joint Tenancy to Community Property
_____ From One Spouse to Both Spouses
__x___ From One Spouse to the Other Spouse
_____ From Both Spouses to the Other Spouses
_____ Other:

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, GRANTOR
Binh C. Nguyen, spouse of grantee
hereby GRANT(S) to Kim To Ta, a married woman as her sole and separate property .

the following described real property in the County of **Orange**, State of California:
See exhibit "A" attached hereto and made a part hereof.

Date    November 22, 2006

_Binh C Nguyen_ (signature)
Binh C. Nguyen

STATE OF CALIFORNIA        }
COUNTY OF ORANGE           } S.S.
                           }

On NOV 30, 2006 before me, MICHAEL VO , personally appeared
**Binh C. Nguyen**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature ___(signature)___

MICHAEL VO
COMM. #1463471
Notary Public-California
ORANGE COUNTY
My Comm. Exp. Jan 17, 2008

# EXHIBIT "A"

LOT 70 OF TRACT NO. 3104, IN THE CITY OF STANTON, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 92, PAGE(S) 46 AND 47, OF MISCELLANEOUS MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM; ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, AND OTHER HYDROCARBON SUBSTANCES BY WHATEVER NAME KNOWN, TOGETHER WITH APPURTENANT RIGHTS THERETO, WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING ABOVE A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED IN INSTRUMENTS OF RECORD.

# Exhibit "B"

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

RECORDING REQUESTED BY
TICOR TITLE COMPANY
OF CALIFORNIA

45.00

2006000815835 08:00am 12/06/06

108 73 D11 14

0.00 0.00 0 00 0.00 39.00 0.00 0.00 0.00

Recording Requested By /
Return To:
**REUNION MORTGAGE INC.**
**860 HILLVIEW COURT, SUITE 300**
**MILPITAS, CA 95035**
**(408) 941-8366**
ATTN: POST CLOSING

Prepared By:
**YUET HANSEN**
**REUNION MORTGAGE INC. - SANTA**
**ANA**
**400 NORTH TUSTIN AVENUE, SUITE**
**350**
**SANTA ANA, CA 92705**
**(714) 708-6800**

12537-19

[Space Above This Line For Recording Data]

# DEED OF TRUST

TA
Loan #: 200502408
PIN: 126-345-12
MIN: 100068300111601747

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **NOVEMBER 24, 2006**, together with all Riders to this document.
**(B) "Borrower"** is **KIM TO TA, A MARRIED WOMAN, AS HER SOLE AND SEPARATE PROPERTY**. Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **REUNION MORTGAGE INC.**. Lender is a **CORPORATION** organized and existing under the laws of **CALIFORNIA**. Lender's address is **400 NORTH TUSTIN AVENUE, SUITE 350, SANTA ANA, CA 92705**.
**(D) "Trustee"** is **TICOR TITLE COMPANY**.
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated **NOVEMBER 24, 2006**. The Note states that Borrower owes Lender **FIVE HUNDRED FOUR THOUSAND AND 00/100** Dollars (U.S. **$504,000.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **DECEMBER 1, 2036**.
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify] **PREPAYMENT PENALTY RIDER** | |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are

200502408

imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. § 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.

As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of ORANGE:
**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.**
which currently has the address of 10231 KENMORE STREET ANAHEIM, California 92804 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial

# EXHIBIT "A"

LOT 70 OF TRACT NO. 3104, IN THE CITY OF STANTON, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 92, PAGE(S) 46 AND 47, OF MISCELLANEOUS MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM; ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, AND OTHER HYDROCARBON SUBSTANCES BY WHATEVER NAME KNOWN, TOGETHER WITH APPURTENANT RIGHTS THERETO, WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION OF THE SUBSURFACE LYING ABOVE A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED IN INSTRUMENTS OF RECORD.

Form PR-S

200502408

payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

    If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA,

200502408

Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

200502408

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially

200502408

equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in

200502408

the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

200502408

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic

200502408

or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the

200502408

Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Kim To Ta_        _11-28-06_
_____
- BORROWER - KIM TO TA - DATE -

State of _California_                )
County of _Orange_                   )
On _11/28/06_                        ) before me,  _Theavy Mam, Notary Public_ ,
                                              (here insert name and title of the officer)

personally appeared  _Kim To Ta_
_____
_____
_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Theavy Mam_  (Seal)

```
THEAVY MAM
Commission # 1472834
Notary Public - California
Riverside County
My Comm. Expires Feb 27, 2008
```

# PREPAYMENT RIDER
## *(Multi-State)*

TA
Loan #: 200502408
MIN: 100068300111601747

This Prepayment Rider is made this **24TH** day of **NOVEMBER, 2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **REUNION MORTGAGE INC.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at **10231 KENMORE STREET, ANAHEIM, CA 92804** (the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." A "Full Prepayment" is the Prepayment of the entire unpaid Principal due under the Note.

**If, within the 6-month period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a Full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first **0.50** year(s) of the term of the Note, no Prepayment penalty will be assessed. In that event, Borrower

603B2 Multi-State Rider
2091.56                                Page 1 of 2                                          11/15/99

200502408

agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

- BORROWER - KIM TO TA - DATE -

## PREPAYMENT PENALTY DISCLOSURE
### *(Multi-state)*

TA
Loan #: 200502408
MIN: 100068300111601747

*Loan Applicant(s):*   KIM TO TA

*Property Address:* 10231 KENMORE STREET, ANAHEIM, CA 92804

    You are entering into a residential mortgage loan that will be secured by the property referenced above. The terms of your loan provide for the payment of a prepayment charge as described below.

    **If, within the 6-month period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a full prepayment, or partial prepayment in any twelve (12)-month period that exceeds 20% of the original principal loan amount, Borrower will pay a prepayment charge as consideration for the Note Holder's acceptance of such prepayment. The prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the prepayment, unless otherwise prohibited by applicable law or regulation. No prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

    Notwithstanding the foregoing, in the event of a full prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first 0.50 year(s) of the term of the Note, no prepayment penalty will be assessed. In that event, you must provide the Note Holder with evidence acceptable to the Note Holder of such sale. For purposes of this exception to the prepayment charge, a sale of the property to a person or entity with whom you have a personal or business relationship (such as a family member, builder, developer or employer) will be presumed NOT to be a bona fide sale of the Property to an unrelated third party.

    ACKNOWLEDGMENT: I/We hereby acknowledge receiving this disclosure.

_____

- BORROWER - KIM TO TA - DATE -

# Exhibit "C"

Recorded In Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    **18.00**

**2007000262267 10:41am 04/24/07**

100 32 D11 5

0.00 0.00 0.00 0.00 12.00 0.00 0.00 0.00

Recording Requested By:
Bank of America, NA

Recording requested by: LSI
When recorded return to :
Custom Recording Solutions
2550 N. Redhill Ave.
Santa Ana, CA. 92705                    ;21
800-756-3524 ext. 5011
Loan Number: 68249014349799

3402316

---

[Space Above This Line For Recording Data]

# SHORT FORM DEED OF TRUST
## (EQUITY MAXIMIZER        ACCOUNT)

This Deed of Trust is made on APRIL 9, 2007        by    KIM T TA

(collectively and individually "Trustor"); PRLAP, INC. ("Trustee"); and   the beneficiary, Bank of America, N.A. ("Bank").  Trustee is a subsidiary of Bank.  Any non-titleholder signs below as Trustor solely for the purpose of subjecting any community property interest in the property described below to this Deed of Trust.  The  words "I," "me," and "my" in this Deed of Trust refer to the Trustor, whether one or more.

**BANK AND I AGREE:**
**1.    Property Security.** For the purpose of securing the obligations described  below,  I irrevocably grant, convey, transfer and assign to Trustee, in trust with power of sale, the property located in   ORANGE
County, California described as follows:
SCHEDULE A ATTACHED HERETO AND MADE A PART OF.

Exhibit

with the street address: 10231 KENMORE ST, ANAHEIM, CALIFORNIA 92804-5167
and with Parcel No. 126 - 345 -72            and including all improvements and fixtures now or later erected on the property,  and all easements, rights, appurtenances and fixtures now or later a part of or related to the above described property (collectively the "Property").

**2.    This Deed of Trust secures:**
   ▪    All of the obligations of the borrowers under the Disclosure and Loan Agreement dated  APRIL 9, 2007                    , and naming    KIM T TA

KIM  T  TA/995070931359431
CALIFORNIA SHORT FORM DEED OF TRUST
(EQUITY MAXIMIZER      ACCOUNT)
CAHESISF.BOA 02/02/07                    Page 1 of 3

DocMagic ⟨⟩☎ 800-649-1362
www.docmagic.com

as borrowers, for a revolving line of credit account (the "Agreement"), as well as any modifications and renewals of the Agreement. The Agreement provides for a Total Credit Commitment (as defined in the Agreement) of $ 91,900.00 , allows for repeated credit advances drawn against the Total Credit Commitment, and provides for a variable interest rate. By mutual agreement, Bank may increase the Total Credit Commitment ("Increased Credit Commitment"); and

- Trustor's performance of each obligation in this Deed of Trust.

This Deed of Trust will not secure borrowers' obligations under the Agreement in excess of the Total Credit Commitment or Increased Credit Commitment, except for any amounts due to: (a) unpaid interest, or (b) expenses that Bank incurs because obligations of a borrower under the Agreement are not fulfilled (including without limitation, any advances that Bank makes to perform borrowers' duties to pay taxes, insurance, etc.)

**To Protect the Security of this Deed of Trust, I Agree:** By the execution and delivery of this Deed of Trust and the Equity Maximizer Agreement and Disclosure secured hereby, that provisions (3) to (20), inclusive of the fictitious deed of trust recorded in  ORANGE          County      JULY 13, 1999          , as Instrument No. 19990515540                    in Book              and at Page          of the Official Records of the County Recorder of that county, (which provisions, identical in all counties, are printed on the following pages) hereby are adopted and incorporated herein and made a part hereof as though set forth at length; and I will observe and perform such provisions; and that the reference to Property, obligations, and parties in such provisions shall be construed to refer to the Property, obligations, and parties set forth in this Deed of Trust.

Trustor requests that a copy of **ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE** under this Deed of Trust be mailed to Trustor at the Trustor's address shown below, or if no address is shown, then at the address of the Property.

Mailing Address for Notices: 10231 KENMORE ST, ANAHEIM, CALIFORNIA
                92804-5167

BY SIGNING BELOW, Trustor accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Trustor and recorded with it.

_____ (Seal)          _____ (Seal)
KIM T TA                    -Trustor                                -Trustor


_____ (Seal)          _____ (Seal)
                            -Trustor                                -Trustor


_____ (Seal)          _____ (Seal)
                            -Trustor                                -Trustor

KIM T TA/995070931359431

CALIFORNIA SHORT FORM DEED OF TRUST
(EQUITY MAXIMIZER     ACCOUNT)
CAHESISF.BOA 02/02/07                            Page 2 of 3

DocMagic ⭐800-649-1362
www.docmagic.com

―――――――――――――― [Space Below This Line For Acknowledgment] ――――――――――――――

State of California                                    )
                                                       ) ss.
County of __Orange__                                   )

On __April 9, 2007__ before me, __LEYNA THANH PHAN, NOTARY PUBLIC__

personally appeared __KIM T TA__ _____

_____

_____,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



LEYNA THANH PHAN
Commission # 1723618
Notary Public - California
Orange County
My Comm. Expires Feb 4, 2011

NOTARY SIGNATURE

LEYNA THANH PHAN
(Typed Name of Notary)

             NOTARY SEAL

# GOVERNMENT CODE
# 27361.7

I certify that under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of the Notary:    Leyna Thanh Phan

Commission Number:    1723615

Date Commission Expires:    February 4, 2011

County where Bond is filed:    ORANGE

Manufacturer or Vendor Number:    NNA1
                    (Located on both sides of the notary seal border)

Signature:

Place of Execution:    Santa Ana

Date:    4/20/2007

APN: 126-345-12                                  Order ID: 3402316
                                                 Loan No.: 995070931359431

## EXHIBIT A
## LEGAL DESCRIPTION

The land referred to in this policy is situated in the State of CA, County of ORANGE, City of
ANAHEIM and described as follows:

Lot 70, Tract 3104, in the City of Stanton, County of Orange, State of California, as per map
recorded in Book 92, Page 46 and 47 of Miscellaneous Maps, in the office of the County Recorder of
said County.

WITH THE APPURTENANCES THERETO.

APN: 126-345-12

# Exhibit "D"

Recording requested by:
**NORTH AMERICAN TITLE COMPANY -**
California

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013


DFF20090134003827

Recorded in Official Records, Orange County

Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖    **12.00**

**2009000162918 08:00am 04/06/09**

105 49 N15 3

0.00 0.00 0.00 0.00 6.00 0.00 0.00 0.00

Space above this line for Recorder's use only

Trustee Sale No. : **20090134003827**        Title Order No.: **914735**

## IMPORTANT NOTICE
# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
# DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS
IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good
standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement
of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until
three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$14,642.42** as of 4/2/2009 and will increase until your account becomes current.  While your property is in foreclosure,
you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to
make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in
the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good
standing.   In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written
evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.   You
may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts
in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time
the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide
additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to
cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon
or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of
your property by paying the entire amount demanded by your creditor.

**IMPORTANT NOTICE**

**NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST**

Trustee Sale No. : **20090134003827**        Title Order No.: **914735**

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**AMERICA'S SERVICING COMPANY**
c/o **NDEx West, LLC**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**
**(866) 795-1852**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:**  NDEx West, LLC is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 11/24/2006, executed by KIM TO TA, as Trustor, to secure obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)**, as Beneficiary **Recorded on 12/06/2006 as Instrument No. 2006000815835** of official records in the Office of the Recorder of **ORANGE** County, **California**, as more fully described on said Deed of Trust.   Including a Note(s)/ Unconditional Guaranty which had a principal amount of **$504,000.00** that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 12/1/2008 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES, IF ANY.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

DATED: **4/2/2009**

NDEx West, LLC as Agent for Beneficiary

By: _____

**Ric Juarez**

# NOTICE OF DEFAULT DECLARATION
## PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

America's Servicing Company
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: KIM T TA
Property Address: 10231 KENMORE ST
                 ANAHEIM        CA   92804

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the
"Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been
met. This Declaration is required for any residential owner occupied property in which the loan
was originated between January 1, 2003 and December 31, 2007. Non-owner occupied and
vacant properties are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

*    The Beneficiary has made contact with the borrower pursuant to CA Civil Code
     2923(a)(2).  Contact with the borrower was made in person or by telephone to assess the
     borrower's financial situation and explore options for the borrower to avoid foreclosure.

*    Due Diligence to contact the borrower was exercised pursuant to CA Civil Code
     2923.5(g)(2) by the Beneficiary.

*    The borrower has surrendered the property as evidenced by either a letter confirming the
     surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or
     authorized agent pursuant to CA Civil Code 2923.5(h)(1).

*    The borrower has contracted with an organization, person, or entity whose primary
     business is advising people who have decided to leave their homes on how to extend the
     foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries
     pursuant to CA Civil Code 2923.5(h)(2).

*    The borrower has filed for bankruptcy and the proceedings have not been finalized
     pursuant to CA Civil Code 2923.5(h)(3).

Dated:    04/01/2009

America's Servicing Company

**John Kennerly**

# Exhibit "E"

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

12.00

2009000397501 08:00am 07/24/09

108 73 N34 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Recording requested by:
**NORTH AMERICAN TITLE COMPANY -**
**California**

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852



NOTS20090134003827

Space above this line for Recorder's use only

Trustee Sale No.: 20090134003827    Title Order No.: 914735    FHA/VA/PMI No.:

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/24/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

NDEX WEST, LLC, as duly appointed Trustee under and pursuant to Deed of Trust **Recorded on 12/06/2006 as Instrument No. 2006000815835** of official records in the office of the County Recorder of **ORANGE** County, State of CALIFORNIA.

**EXECUTED BY:    KIM TO TA,**
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
**DATE OF SALE:    08/11/2009        TIME OF SALE:    12:00 PM**
**PLACE OF SALE:    AT THE NORTH FRONT ENTRANCE TO THE COUNTY COURTHOUSE, 700 CIVIC CENTER DRIVE WEST, SANTA ANA, CA.**
**STREET ADDRESS** and other common designation, if any, of the real property described above is purported to be:
**10231 KENMORE STREET, ANAHEIM, CALIFORNIA 92804**
**APN#:        126-345-12**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$517,095.54**. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
**AGENCY SALES & POSTING**
**3210 EL CAMINO REAL, SUITE 200**
**IRVINE, CA 92602**
**714-730-2727**
**www.lpsasap.com**

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NDEx West, L.L.C. as Authorized Agent

_____    Dated: 07/22/2009

BY: Randy Middleton

FCUS_NoticeOfTrusteeSale.rpt - Rev.d - 01/09/2009 - Ver-20                                                    **Page 1 of 1**

CALIFORNIA DECLARATION

I, _____ China Brown _____, of America's Servicing Company ("Mortgage Loan Servicer"), declare under penalty of perjury, under the laws of the State of California, that the following is true and correct:

The Mortgage Loan Servicer _X__ has or _____ has not obtained from the Commissioner of Corporation a final or temporary order of exemption pursuant to California Civil code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

AND/OR

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 ___ does or _X__ does not apply pursuant to Section 2923.52 or 2923.55.

07/01/2009     Fort Mill, South Carolina
DATE AND PLACE

_____        Loan Administration Supervisor
Name of Signor                        Title and/or Position

China Brown

# Exhibit "F"

Recording requested by:
**NDEx West, L.L.C.**
**15000 Surveyor Boulevard, Suite 500**
**Addison, Texas 75001-9013**

When Recorded Mail to and Mail Tax Statement to:
US BANK NATIONAL ASSOCIATION, .et al
c/o AMERICA'S SERVICING COMPANY
3476 STATEVIEW BLVD.
FORT MILL, SC 29715

APN #: 126-345-12
Property Address:
**10231 KENMORE STREET**
**ANAHEIM, CALIFORNIA 92804**

TDUS20090134003827

**Recorded In Official Records, Orange County**

**Tom Daly, Clerk-Recorder**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖        **9.00**

**2010000409632 08:00am 08/24/10**
93 401 T09 2

0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

Space above this line for Recorder's use only

Trustee Sale No. : 20090134003827          Title Order No.: 914735

## TRUSTEE'S DEED UPON SALE

The undersigned grantor declares:
1) The Grantee herein WAS the foreclosing beneficiary
2) The amount of the unpaid debt together with cost was          **$556,317.04**
3) The amount paid by the grantee at the trustee sale was          **$309,000.00**
4) The documentary transfer tax is
5) Said property is in the city of **ANAHEIM**

NDEx West, L.L.C., as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but
without covenant or warranty, express or implied, to:

**US BANK NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA,**
**NATIONAL ASSOCIATION, (SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL**
**ASSOCIATION) AS TRUSTEE FOR MORGAN STANLEY LOAN TRUST 2007-8XS**

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of Orange, State of
California, described as follows:

LOT 70 OF TRACT NO. 3104, IN THE CITY OF STANTON, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER
MAP RECORDED IN BOOK 92, PAGE(S) 46 AND 47, OF MISCELLANEOUS MAPS IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM; ALL OIL, OIL RIGHTS, NATURAL GAS RIGHTS, MINERAL RIGHTS, AND OTHER
HYDROCARBON SUBSTANCES BY WHATEVER NAME KNOWN, TOGETHER WITH APPURTENANT RIGHTS
THERETO, WITHOUT, HOWEVER, ANY RIGHT TO ENTER UPON THE SURFACE OF SAID LAND NOR ANY PORTION
OF THE SUBSURFACE LYING ABOVE A DEPTH OF 500 FEET, AS EXCEPTED OR RESERVED IN INSTRUMENTS OF
RECORD.
APN: 126-345-12

RECITALS:
This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated **11/24/2006** and
executed by **KIM TO TA** Trustor(s), and Recorded on **12/06/2006 as Instrument No. 2006000815835** of official records of
Orange County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the Office of the Recorder of said

**MAIL TAX STATEMENTS AS DIRECTED ABOVE**

FCUS_TrusteeDeedUponSale.rpt- (07/30/2010) / Ver-24

THIS IS AN ACCOMMODATION RECORDING ONLY. IT HAS
NOT BEEN ABSTRACTED AS TO ITS CONTENT OR THE
EFFECT IT MAY PRESENT UPON RECORDING.
NORTH AMERICAN TITLE CO.

Page 1 of 2

Trustee Sale No. : 20090134003827          Title Order No.: 914735

County, and such default still existed at the time of sale.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of a Sale have been complied with.

Trustee, in compliance with said Notice of Trustee's Sale and in exercise of its powers under said Deed of Trust, sold the herein described property at public auction on **08/10/2010**. Grantee, being the highest bidder at said sale, became the purchaser of said property for the amount bid being **309,000.00** in lawful money of the United States, or by credit bid if the Grantee was the beneficiary of said Deed of Trust at the Time of said Trustee's Sale.

DATED: 08/20/2010

**NDEx West, L.L.C., as Trustee**

_Joyce Copeland_

8/20/2010
DATED

State of     TEXAS     }
County of   DALLAS   }

On _____8/20/2010_____ before me, _____**Jerry J. Howell**_____ Notary Public, personally appeared Joyce Copeland who is known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____   (Seal)

My commission expires: _____

NOTARY PUBLIC
JERRY J. HOWELL
Notary Public
State of Texas
My Comm. Exp. 02-20-2013

1

## PROOF OF SERVICE

2
### TA KIM TO V. U.S. BANK NATIONAL ASSOCIATION, ET AL
### USBC-CENTRAL-SANTA ANA DIVISION CASE NO. 8:10-BK22705-TA

3
### (ADVERSARY CASE NO. 8:10-AP-01502-TA)

4

STATE OF CALIFORNIA, COUNTY OF ORANGE

5

6        I am employed in the City of Irvine in the County of Orange, State of
California.   I am over the age of 18 and not a party to the within action.   My
business address is Suite 1100, 18201 Von Karman Avenue, Irvine, California

7    92612-1077.

8        On November 29, 2010, I served on all interested parties as identified on the
below mailing list the following document(s) described as:

9

10                    **REQUEST FOR JUDICIAL NOTICE**

11  [ X ]  **(BY MAIL, 1013a, 2015.5 C.C.P.)**  I deposited such envelope in the mail at
Irvine, California.  The envelope was mailed with postage thereon fully prepaid.  I

12  am readily familiar with the firm's practice for collection and processing
correspondence for mailing.  Under that practice, this(these) document(s) will be

13  deposited with the U.S. Postal Service on this date with postage thereon fully
prepaid at Irvine, California in the ordinary course of business.  I am aware that on

14  motion of the party served, service is presumed invalid if postal cancellation date or
postage meter date is more than one day after date of deposit for mailing in

15  affidavit.

16

17                        **SERVICE LIST**

| 18 | Gary Harre, Esq. | Attorney for Plaintiff **TA KIM** |
| 19 | LAW OFFICES OF GARY HARRE & | **TO** |
|    | ASSOCIATES | |
| 20 | 1940 W. Orangewood Ave., Suite 110 | Phone: (714) 634-3842 |
| 21 | Orange, CA 92868 | Fax: |

22        ☒      **(FEDERAL)** I declare that I am employed in the office of a member
of the bar of this Court at whose direction service was made.

23

24    Executed on November 29, 2010, at Irvine, California.

25

26                                         Elizabeth May

27

28
KUTAK ROCK LLP
ATTORNEYS AT LAW
IRVINE

4811-7226-8296.1
14617-413

SERVICE LIST