GARY HARRE, ESQ. (BAR NO. 86938)
Global Capital Law, P.C.
17111 Beach Blvd, Ste 100
Huntington Beach, CA 92647
Telephone: (714) 907-4182
Email: ghcmecf@gmail.com

Attorney for Debtor
TA KIM TO

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>  TA KIM TO<br><br>_____<br><br>TA KIM TO, an Individual<br><br>  Plaintiff,<br><br>-vs.-<br><br>U.S. BANK NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO BANK OF AMERICA, NATIONAL ASSOCIATION, (SUCCESSOR BY MERGER TO LASALLE BANK NATIONAL ASSOCIATION) AS TRUSTEE FOR MORGAN STANLEY TRUST 2007-8XS; NDEx WEST, LLC; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto; and DOES 1-100, Inclusive;<br><br>  Defendant. | **Case No.  8:09-bk-22705-TA**<br><br>**ADV. NO. 8:10-ap-01502-TA**<br><br>**PLAINTIFF'S SUPPLEMENTAL RESPONSE TO U.S. BANK NATIONAL ASSOCIATION PRELIMINARY OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION.**<br><br>Hearing Date:<br><br>Date:  December 15, 2010<br>Time: 2:00 p.m.<br>Ctrm: 5B |

//

//

//

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

Plaintiff TA KIM TO ("TA") hereby files her supplemental response to U.S. Bank National Association ("US BANK") opposition to Plaintiff's preliminary injunction.

## 1. Counsel for US Bank made misrepresentation to the Court and this Court should not condone such action by Counsels.

Kutak Rock ("Kutak"), as counsel for US Bank represented that it received an assignment from US BANK on November 30, 2010. [Declaration of Tiffany A. Keith under penalty of perjury ("Keith Decl.") ¶ 2].

This is clearly a false declaration and misrepresentation to the Court for the following reason. According to Pacer Docket, Kutak acted on behalf of US BANK and filed the following documents:

a. Notice of Motion and Motion to Dismiss Plaintiff's Adversary Proceeding; Memorandum of Points and Authorities in support thereof, filed on <u>November 29, 2010</u>. [Pacer Docket No. 11].

b. Notice of Motion and Motion To Strike Portions of Plaintiff's Complaint; Memorandum of Points and Authorities in support thereof, filed on <u>November 29, 2010</u>. [Pacer Docket No. 12].

c. Request for judicial notice Filed by Defendant U S Bank National Association, filed on <u>November 29, 2010</u>. [Pacer Docket No. 13.]

Based upon moving papers filed by counsel for US Bank, Kutak, it would be an impossibility that the law firm would be able to prepare and to file such volume of documents before it received an assignment from US BANK.

## 2. Based on the Records as Produced by Defendants, Preliminary Injunction should be Granted.

Defendant NDEx West, LLC ("NDEx") filed its Request for Judicial Notice ("RJN") of various documents as Exhibit to its Motion to Dismiss Adversary

Proceeding [Pacer Docket No. 8]. Exhibit 2, Page 15 of the RJN is the purported Assignment of Deed of Trust allegedly recorded in the official records of Orange County as Document # 2009000247269. A search of public record with Orange County Recorder failed to show such document exists. Furthermore, Exhibit 2, Page 15 of NDEx's RJN does not contain official stamp from the Orange County Recorder. Therefore, authenticity of such document is in question.

Assuming *arguendo* that such document exists and authenticated assignment by MERS as Nominee for Reunion to US BANK is fraudulent, which rendered trustee's Deed upon Sale VOID.

On 5/12/2009, MERS purportedly assigned its interest of Deed of Trust "Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust." However, no promissory note is produced that showed MERS had any interest in the promissory note to assign.

### a. MERS' Assignment to US BANK is a Question of Law and such Assignment is invalid based on Evidence Produced by Defendants.

A secured promissory note traded on the secondary mortgage market remains secured because the mortgage follows the note. Cal. Civ. Code § 2936 ("The assignment of a debt secured by mortgage carries with it the security.") California codified this principle in 1872. Similarly, this has long been the law throughout the United States: when a note secured by a mortgage is transferred, "transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter." Carpenter v. Longan, 83 U.S. 271, 275 (1872). Clearly, the objective of this principle is" to keep the obligation and the mortgage in the same hands unless the parties wish to separate them." Restatement (Third) Of Property (Mortgages) § 5.4 (1997). The principle is justified, in turn, by reasoning that the "the debt is the

principal thing and the mortgage an accessory." *Id.* Consequently, "[e]quity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both." *Id.* Given that "the debt is the principal thing and the mortgage an accessory," the Supreme Court reasoned that, as a corollary, "[t]he mortgage can have no separate existence." *Carpenter*, 83 U.S. at 274. For this reason, "an assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. " *Id.* at 274. While the note is "essential," the mortgage is only" an incident" to the note. *Id.*

As noted in Plaintiff's brief, Reunion Mortgage Inc. was the Lender and if it transferred the note, MERS is no longer an authorized agent of Reunion unless it has a separate agency contract with the new undisclosed principal. Defendants present no evidence as to who owns the note, or of any authorization to act on behalf of the new note holder.

### b. MERS' Assignment of Mortgage to US BANK as Trustee for MORGAN STANLEY TRUST 2007-8XS is an Impossibility Because It Violated Trust Agreement.

The trust agreement which created the Morgan Stanley Trust 2007-8XS is called a Pooling and Servicing Agreement ("PSA") and is filed under oath with the Security and Exchange Commission and is available at SEC.gov. The Trust agreement is filed as Exhibit 99.1 to form 8-k filed with SEC. Section 11.06 of the PSA is an election by the parties to the Trust that the Trust will be governed under the laws of the State of New York. Therefore, this Court would be required to consider the impact of the action of any party to the Trust agreement which violated the Trust agreement under New York Law.

The Trust agreement or PSA sets forth how the trust acquires its assets, both powers and the limits of the powers of the Trust. The Assignment and

Assumption Agreement is incorporated into the Trust Agreement as Exhibit G to the Trust Agreement.

The PSA and the Assignment and Assumption Agreement when read together require that each party to the sale of the mortgage loans endorse each promissory note to the next party in the chain of title until the promissory note is endorsed to the Trustee for the benefit of the Trust.

While there is no promissory note produced, one would expect to see a series of endorsements of the promissory note reflective of each party who had ownership interest in the promissory note culminating with a specific endorsement to the Trustee on behalf of this particular trust and that this series of endorsements could have occurred no later than ninety days after the closing date set forth in the PSA which was May 31, 2007 (This is found at page 17 of the PSA).

In this case, the mortgage assignment produced by Defendant NDEx, which is included herein as reference as Exhibit 1, indicated that the mortgage assignment from MERS as nominee for Reunion Mortgage Inc. dated May 12, 2009 was the method by which the promissory note was conveyed to the Trust in this case. This is clearly violates the terms of the Trust found in the PSA.

The PSA states explicitly at section 2.01 that the assets of the trust were conveyed to the trust on the date the PSA was executed on May 31, 2007. Additionally, the parties to the PSA required three different certifications in the PSA which were made by the Master Document Custodian to the Trustee that all of the mortgage loans purchased by this Trust were present and that each promissory note contained every endorsement that was required by the agreement including a specific endorsement to the Trust.

There are clearly obstacles which make the assertion that this promissory note was acquired by this Trust on May 12, 2009 IMPROBABLE or IMPOSSIBLE depending upon the Court's interpretation of New York Law. In Section 2.06 of the PSA (at page 62), there are express limitations on the right of the Trust to act. In Section 10.02 (page 141), the PSA expressly states that the Trustee shall not accept any contribution of assets to the Trust unless the Trustee shall have obtained an opinion of counsel that the contribution will not cause any REMIC to fail to qualify as a REMIC or subject the Trust to any Federal Tax on "prohibited transactions" which are defined under the Tax Code.

In fact Article X of this PSA (Pages 138-143) set forth further explicit restriction on the powers of the Trustee and the Master Servicer and prohibits either of them from acquiring any assets beyond the closing date of the Trust and without a proper opinion of counsel that this acquisition would not violate the REMIC provisions of the Tax Code.

Based on information available from the assignment of the deed of trust by MERS and the PSA, the Trust obtained this promissory note on May 12, 2009 on its face would violate the REMIC provisions of the IRS tax code for number of reasons. **First** the loan was in default on April 2, 2009 (NDEx Exhibit 4 is attached herewith as Exhibit 2 for reference). Therefore, the loan could not have been a "qualified mortgage loan" under the IRS tax code because a qualified mortgage loan is a performing mortgage loan. **Second**, the alleged transfer to the trust was after the closing date and after the certificates were issued, in effect, the Defendant is claiming to have transferred an asset to a trust that has by its own terms been closed for more than two years at the time the alleged transfer took place. **Third**, there is no promissory note that shows that it was endorsed to the trust by the depositor

and is devoid of the required chain of endorsements to establish a true sale under applicable portions of the IRS tax code.

As noted by evidence provided by Defendants, the assignment of deed of trust indicated that the assignment of the mortgage carried with it the promissory note to the Trust by MERS.  Review of MERS procedures manual which is available for download at http://www.mersinc.org/MERSProducts/manuals.aspx?mpid=1 indicated that this mortgage assignment violates MERS own written procedures found at page 66 of the MERS Procedures Manual which states that "MERS cannot transfer the beneficial rights to the debt.  The debt can only be transferred by properly endorsing the promissory note to the transferee."

A proper negotiation to this Trust would require a specific negotiation to this trust in conformity with the time frames set forth in the PSA.

**CONCLUSION**

Accordingly, plaintiff pray the Court to grant the Preliminary Injunction because US BANK could not own this promissory note in order to be foreclosing beneficiary and made such credit bid.  Because of the strict requirements of this Pooling and Servicing Agreement, this Trust could not become the owner as claimed without running afoul of the express terms of the PSA and without an opinion of counsel to the certificate insurer, the Master Servicer and the Trustee that the purportedly acquired without adverse impact under the REMIC provisions of the US Tax Code.

Dated: 12/09/2010                                     Respectfully Submitted;

                                                      _____
                                                      Gary Harre, Esq.
                                                      Attorney for Plaintiff, TA KIM TO